| | | |
|---|---|---|
| **LAMONT BOYD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:13-cv-1207** |
| | ) | |
| **CORRECTIONS CORPORATION OF AMERICA,** | ) | **Judge Campbell** |
| **OFFICER JAMES YARBROUGH, and** | ) | |
| **WARDEN BLAIR LEIBACH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff Lamont Boyd's complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915, 1915A, and 42 U.S.C. § 1997e.

Under the PLRA, the Court is required to dismiss any *in forma pauperis* complaint brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. The Court must read the plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept the plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

The plaintiff names as defendants in this action CCA, Corrections Officer James Yarbrough, and Warden Blair Leibach. Based on the allegations in the complaint and the demands made in the "relief" section thereof, the Court presumes that the plaintiff also intended to name as a defendant CPT Maitland Deathrow. The plaintiff alleges that on the evening of Saturday, January 19, 2013, Officer Yarbrough had conducted "three red zone rounds (the opening and closing of individual cell doors)" between 7:30 and 8:30 p.m., and then Officer Thomas performed a random search of cell 021, to which the plaintiff was assigned. When the plaintiff was allowed to return to his cell, he immediately notice that his entire bag of recently purchased commissary items, worth $32, was missing. An investigation was performed, the results of which were inconclusive. The plaintiff states, however, that other inmates told him that his cellmate, Akeen Johnson, had Officer Yarbrough let Johnson into his cell, and Johnson then allowed another inmate, Marquize Brandon, to steal the plaintiff's commissary items. Johnson and Brandon then

went into the cell next door and split up the commissary items among themselves and another inmate.

While the official investigation was still ongoing, Johnson threatened the plaintiff, allegedly telling him, "I'm going to pop on you when we get in the room." (ECF No. 1-1, at 2.) Officer Thomas overheard the threat. CPT Maitland Deathrow later came into the cell and escorted Johnson "behind the Captain's Desk" (*id.*), presumably for questioning. The plaintiff states that when he explained the whole story to CPT Deathrow, this officer stated: "I don't give a fuck about your commissary, I'm here for your security." (*Id.*)

The plaintiff was later told that CPT Deathrow had checked "Pelco" (presumably video surveillance), and it only showed Johnson going in and out of the cell. The plaintiff was told that if he and Johnson could not get along, they would both go into segregation. "So [the plaintiff] was forced to remain in the cell with someone who had threatened [him]." (*Id.* at 2–3.) The plaintiff does not allege that he was ever actually injured by Johnson, who is apparently no longer his cellmate.

The plaintiff complains that no further investigation was conducted and insists that the incident constitutes "a violation of [his] right to be safe while being housed in this facility." (*Id.* at 3.) However, his primary complaint is that CCA refused to compensate him for the value of the stolen items. He states that he provided to Warden Leibach, at the warden's request, additional evidence pertaining to the theft, including his account balance sheet and commissary purchase receipt to verify the purchases he had made for the week in question. The warden refused to consider this information and informed the plaintiff that the investigation was complete and a decision had been made. The plaintiff further asserts that a white inmate named David Bittikofer had commissary items stolen from him by his cellmate just a month or so before the plaintiff's incident, and CCA refunded to Bittikofer the "ten or twelve dollars for commissary that was stolen from him." (*Id.* at 4.) The plaintiff also complains that in the unit to which he is assigned, the inmates are not allowed locks, but in other units they are.

In the "relief" section of his complaint, the plaintiff demands a refund from CCA and apologies from Officer Deathrow and Warden Leibach. He does not expressly seek any sort of relief from Officer Yarbrough.

The plaintiff's complaint is brought under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v.*

*Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983. Because they were "perform[ing] the traditional state function of operating a prison," it is clear, as an initial matter, that the defendants in this action qualify as persons "act[ing] under the color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The question, then, is whether the plaintiff's allegations, if true, might establish that these persons violated his constitutional rights.

The plaintiff makes essentially three claims in this action: (1) an Eighth-Amendment failure-to-protect claim based on his allegations that the defendants failed to take seriously the threat against him by inmate Johnson; (2) a procedural due-process claim based on Yarbrough's alleged involvement in Johnson's theft of goods from the plaintiff, and on CCA's refusal to reimburse him for the value of the goods allegedly stolen by Johnson; and (3) an equal-protection claim based on his allegation that CCA reimbursed a white inmate for the cost of goods stolen from him by his cell mate but refused to compensate the plaintiff, who is black, under similar circumstances. The plaintiff also seeks an apology from defendant Deathrow, but the basis for the plaintiff's claim against Deathrow is not clear.

First, with respect to Johnson's threat of harm, while prison officials have an obligation to protect prisoners from injury by other inmates, the plaintiff has not shown that any failure to take the threat seriously resulted in physical harm or any other damage to him or that the threat of harm is ongoing at this point. In order to state a claim for damages based on a violation of his rights under the Eighth Amendment, the plaintiff must allege that he suffered some physical injury. *See, e.g.*, *Saunders v. Tourville*, 97 F. App'x 648, 649 (7th Cir. 2004) ("[A]n inmate who suffers only a risk of physical harm has no compensable claim under the Eighth Amendment."); *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) (affirming dismissal of claim for damages based on threats that did not result in physical harm). While the plaintiff would not necessarily need to show actual harm in order to be entitled to injunctive relief, he does not allege that Johnson is still his cellmate or that he remains in danger, so he has no basis for seeking injunctive relief either. *See Wilson*, 148 F.3d at 600 (affirming dismissal of claims for injunctive relief where the plaintiff did not allege that he remained in danger). The Court therefore finds that the plaintiff fails to state a claim based on the prison officials' failure to take Johnson's threat seriously.

Regarding the alleged theft of the plaintiff's property, the plaintiff does not actually claim that he

was deprived of his property by a state actor. Instead, he claims his commissary items were stolen by another inmate. However, the plaintiff also appears to be claiming that Officer Yarbrough was somehow involved in the incident, either intentionally or negligently. Thereafter, the plaintiff filed grievances, which were denied, and he unsuccessfully appealed those grievances. He alleges that prison officials did not conduct an adequate investigation and essentially minimized or disregarded his theft claim, and refused to reimburse him for the amount stolen. In this sense as well, the plaintiff appears to be asserting that he was "deprived" of his property by one or more state actors.

Theft by another inmate, *per se*, does not give rise to a constitutional claim, because the other inmate is in no sense a "state actor." At best, the plaintiff would have a state-law tort claim for theft against the other inmate. However, a claim premised on the deprivation of property *by a state actor*, without due process of law, is cognizable in a civil action brought under § 1983. *Lynch v. Household Fin.*, 405 U.S. 538, 552 (1972). Notwithstanding, not every deprivation of property by a state actor gives rise to a federal cause of action. Under *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986), a person deprived of property by a "random and unauthorized act" of a state employee has no federal due-process claim unless the state fails to afford an adequate post-deprivation remedy. *Id.* at 537. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). The Sixth Circuit has further held that the plaintiff seeking to avoid dismissal of his due-process claim under *Parratt* has the "burden of pleading and proving the inadequacy of state processes." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983).

The plaintiff in this case fails to state a procedural due process claim based on the alleged theft of his property because: (1) the deprivation was unpredictable; (2) pre-deprivation process was impracticable; (3) Officer Yarbrough was not authorized to take the action that allegedly deprived the plaintiff of his property; and (4) although the plaintiff alleges that officials did not conduct a sufficiently thorough investigation and that his grievances relating to this topic were denied, his allegations do not suggest that his state post-deprivation remedies are inadequate. *See Benson v. Carlton*, 229 F.3d 1150 (Table), 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000) (affirming dismissal of *pro se* prisoner's claim for failure to allege inadequate state remedy as required by *Vicory* and *Parratt*). This claim too is subject to

dismissal.

Insofar as the plaintiff seeks relief from defendant Deathrow, the Court finds that the plaintiff fails to assert any cognizable claim against that defendant. The only allegation against Deathrow, apart from his alleged involvement in the failure to protect the plaintiff from the purported threat posed by inmate Johnson, is that he exclaimed to the plaintiff, "I don't give a fuck about your commissary, I'm here for your security." ((ECF No. 1-1, at 2.) Cursing and disrespect alone do not give rise to a claim of constitutional dimension. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (verbal abuse, harassment, and threats are insufficient to state a constitutional violation under § 1983); *Searcy v. Gardner*, No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). Nor does the plaintiff allege facts suggesting Deathrow might be liable to him under any state law.

Finally, the plaintiff seems to be attempting to make out an equal-protection claim based on CCA's allegedly treating a white inmate more favorably than it treated him, because it reimbursed the white inmate for the amount of his loss at the hands of another inmate. The plaintiff states: "If another inmate or inmates have received compensation in the past for loss of property under identical or similar circumstances as I experienced then I should be afforded this same right." (ECF No. 1-1, at 4.) The plaintiff does not expressly state who made the decision to reimburse the other inmate or the decision not to reimburse him, nor does he state that the decision was made as a matter of custom or policy on the part of CCA. The Court nonetheless finds, based on these allegations, solely for purposes of the initial review, that the plaintiff has adequately alleged an equal-protection claim under the Fourteenth Amendment against Warden Leibach in his individual capacity as the person who may be presumed to have made these decisions on behalf of CCA, and against CCA on the basis of an implied policy or custom.

The plaintiff's equal-protection claim will be permitted to proceed against these two defendants, but the remaining claims against the other two defendants will be dismissed under the PLRA for failure to state a claim upon which relief may be granted. An appropriate order is filed herewith.

_Todd Campbell_
Todd Campbell
United States District Judge